NEWTOWNE VILLAGE SERVICE CORPORATION and Michael Ciabattoni, Plaintiffs Below, Appellants,

v.

NEWTOWNE ROAD DEVELOPMENT COMPANY, INC., and Blenheim Homes, L.P., Defendants Below, Appellees.

No. 613, 1999.

Supreme Court of Delaware.

Submitted: March 20, 2001.
Decided: May 2, 2001.

Matthew P. Denn, John W. Shaw, (argued), Young, Conaway, Stargatt & Taylor, L.L.P., Wilmington, for appellants.

Richard P. Beck, Morris, James, Hitchens & Williams, and Jeffrey M. Weiner (argued), Wilmington, for appellees.

Before VEASEY, C.J., WALSH, HOLLAND, BERGER, and STEELE, JJ., constituting the Court En Banc.

PER CURIAM:

In this appeal from the Superior Court, we consider the proper construction of Section 20–70 of the New Castle County Code ("NCCC"), as it existed in 1993, which governed the financial responsibility for the upkeep of open spaces in housing subdivisions. We conclude that the applicable provisions of Section 20–70 of the NCCC in effect at the time of the dispute in this case were not ambiguous and did not require developers to maintain open spaces in housing developments pending approval of those areas of the subdivision by New Castle County ("County"). Accordingly, the decision of the Superior Court is affirmed.

I

Newtowne Village is a community of homes situated near Bear, Delaware. Appellee/defendant-below, Blenheim Homes, L.P. ("Blenheim"), constructed all the homes located in Newtowne Village. Appellee/defendant-below, Newtowne Road Development Company[1] was the owner of the lots upon which the homes were built. Newtowne Village was developed in three separate phases, each governed by a separately approved and recorded subdivision plan. The present dispute involves the financial responsibility for the upkeep of open space located in Phase III of Newtowne Village.

On March 3, 1993, the County approved the exploratory plan for Phase III.[2] On September 3, 1993, a Maintenance Declaration was recorded in accordance with NCCC Section 20–70(c)(1), which provided that:

All areas designated on the record plan as private open space, private streets or rights-of-way, parking areas, or other common facilities, shall be maintained pursuant to the terms of a maintenance agreement executed by the owner of the common areas in a form substantially similar to that set forth in appendix XIV to this Chapter. The maintenance agreement shall be subject to the approval of the New Castle County Law Department and shall be executed and submitted to that Department for recording prior to the approval of the record plan.

The Maintenance Declaration,[3] which was approved by the New Castle County

---

1. For purposes of this opinion, Blenheim and Newtowne Road Development Co. will be referred to collectively as "Blenheim."

2. The relevant provisions of the NCCC applicable to this dispute were those in existence when the County accepted the exploratory plan for review.

3. Section 20–70(c)(1) required maintenance declarations to be executed in substantially the same form as Appendix XIV. Here, the Maintenance Declaration, which mirrored the language found in the NCCC Appendix XIV, provided in relevant part:
 1. In order that the Private Open Spaces shall be maintained in good and proper condition, fit for their intended purposes,

Law Department, created Appellant/plaintiff-below, Newtowne Village Service Corporation ("Service Corporation"), in order to maintain the open spaces and other common facilities in Phase III.

Prior to the 1995 amendments, which substantially revised the NCCC as it related to the responsibility and maintenance of open space,[4] Section 20–70(c)(5) provided that:

> The corporation created to maintain the private areas shall be created prior to the conveyance of the first lot or dwelling within the subdivision. The developer and/or owner of the subdivision shall be a member of the maintenance corporation until the last lot in the subdivision has been conveyed, and shall be assessed for the maintenance costs attributable to the lots he owns from the time of creation of the maintenance corporation until the transfer of the last lot in the subdivision.

In accordance with this provision, Blenheim was initially the sole member of Service Corporation because it collectively owned all the houses and lots in Newtowne Village. At this time, a Blenheim employee was appointed to manage Service Corporation. On September 20, 1993, the Major Subdivision Plan for Phase III was approved by the County and recorded. In 1995, control of Service Corporation was passed to the homeowners in Phase III of Newtowne Village.

The open space for Phase III of Newtowne Village has not been approved by the County. When control of Phase III open space was turned over to Service Corporation in the Spring of 1995, Blenheim ceased funding the maintenance of open space. In September 1998, Service Corporation filed suit alleging that Blenheim was required to pay Service Corporation for the cost of maintaining open space and common facilities in Phase III pending County approval of the transfer of such land to Service Corporation. Service Corporation further contended that Bleinheim was obligated to maintain the open spaces using its own funds, rather than those funds designated for Service Corporation, and sought repayment of monies used by Service Corporation to maintain open spaces prior to the transfer of those areas. Before trial, the parties filed cross motions for summary judgment. Blenheim's motion for summary judgment was granted by the Superior Court, which ruled that the ordinance was not ambiguous and limited Blenheim's maintenance obligation to its *pro rata* ownership.

## II

 Whether the grant or denial of a motion for summary judgment is proper

---

according to the provisions of Sections 20–70(c) and (d) of the New Castle County Code, Declarant shall organize a maintenance corporation (hereinafter "the Corporation") whose Members shall be the record Owners of the Lots.

 2. Prior to the conveyance of the first Lot to any Owner, Declarant shall incorporate under the laws of the State of Delaware the Corporation referred to in paragraph I hereof as a nonprofit corporation to be known as a "maintenance corporation" for the benefit of all Owners, which Corporation shall be charged with the duty of maintaining the Private Open Spaces in the condition required by the aforesaid laws of New Castle County, and all other applicable laws and covenants, and by the Corporation's Charter and By–Laws.

4. The 1995 amendments to the NCCC addressed the source of confusion that is at the heart of this dispute. The 1995 amendments clearly place the responsibility for maintaining open spaces upon the owner or developer of the subdivision until the maintenance corporation has been transferred to the homeowners and the open space properly completed and conveyed to the maintenance corporation.

presents a question of law that this Court reviews *de novo*. *See Alfieri v. Martelli*, Del.Supr., 647 A.2d 52, 53 (1994). The Superior Court's decision granting summary judgment will be affirmed if it appears that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Bailey v. City of Wilmington*, Del.Supr., 766 A.2d 477, 479–80 (2001); *Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96, 99–100 (1992). Where, as here, the issue on appeal is a matter of law, we must determine whether the Superior Court "erred in formulating or applying legal precepts." *Hudson Farms, Inc. v. McGrellis*, Del.Supr., 620 A.2d 215, 217 (1993).

Service Corporation contends that Section 20–70 of the NCCC is ambiguous as to who bears financial responsibility for the upkeep of open space and should be interpreted to require Blenheim to pay the cost of maintaining open space in Phase III of Newtowne Village pending County approval. Specifically, Service Corporation contends that, because the NCCC does not specify whether the developer or maintenance corporation has financial responsibility for the upkeep of unapproved open spaces, it is susceptible to different conclusions or interpretations. According to Service Corporation, the 1993 Code makes a distinction between construction of open space, which is the express responsibility of the developer, and maintenance of open space, which is the responsibility of the maintenance corporation. The selection of these two different terms suggests different purposes, thus creating an ambiguity since the statute does not delineate "the period of time when open space is being constructed … and the time when the open space is no longer being constructed." Service Corporation contends the ambiguity should be resolved by requiring developers to maintain open spaces pending County approval.

Blenheim responds that the statute is not ambiguous and, by its terms, fixes responsibility for maintaining open spaces with the maintenance corporation. Blenheim contends the statute requires the creation of a maintenance corporation charged with the duty of maintaining open spaces, and empowered to levy assessments to cover the costs of such maintenance, prior to the first conveyance of a deed to a homeowner. Therefore, according to Blenheim, a developer's sole responsibility for maintaining open spaces ends after a third party receives a deed to one of the lots. At this point, Blenheim asserts that responsibility shifts to the maintenance corporation.

Only where a statute is ambiguous and its meaning cannot be clearly ascertained does a court engage in the process of statutory construction and interpretation. *See Carper v. New Castle County Bd. of Ed.*, Del.Supr., 432 A.2d 1202, 1205 (1981). Our first task, therefore, is to determine whether the provisions of the NCCC are ambiguous. *See State Dept. of Labor v. Reynolds*, Del. Supr., 669 A.2d 90, 93 (1995). A statute will be considered ambiguous when it is reasonably susceptible of different conclusions or interpretations. *See Snyder v. Andrews*, Del.Supr., 708 A.2d 237, 241 (1998); *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985). Ambiguity may also be found if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature. *See Snyder*, 708 A.2d at 241; *Distefano v. Watson*, Del.Supr., 566 A.2d 1, 4 (1989); *Coastal Barge*, 492 A.2d at 1246. When the language and intent of a statute are clear, no ambiguity exists and the Court will not engage

in construing or interpreting the statute. *See General Motors Corp. v. Burgess,* Del.Supr., 545 A.2d 1186, 1191 (1988); *Distefano,* 566 A.2d at 4. If a statute is unambiguous, the plain meaning of the statute controls. *See Eliason v. Englehart,* Del.Supr., 733 A.2d 944, 946 (1999); *Giuricich v. Emtrol Corp.,* Del.Supr., 449 A.2d 232, 238 (1982); *Daniels v. State,* Del.Supr., 538 A.2d 1104, 1109 (1988); *Coastal Barge,* 492 A.2d at 1246.

■ We conclude that the provisions of the NCCC pertinent to this dispute are not ambiguous. Section 20–70 of the NCCC does not appear "reasonably susceptible of different conclusions or interpretations." *Distefano,* 566 A.2d at 4. The ordinance required the creation of a maintenance corporation prior to the first conveyance of a lot in the subdivision in order to *maintain* open spaces. *See* NCCC Section 20–70(c)(5) ("The corporation created to maintain the private areas shall be created prior to the conveyance of the first lot or dwelling within the subdivision ..."). In addition, Appendix XIV to Section 20 specifically authorized the maintenance corporation to "collect the equivalent of two (2) years of assessments for the maintenance costs associated with the maintenance of the common areas...." The code clearly required the creation of a maintenance corporation prior to the conveyance of a lot to a home buyer, and the funding of this corporation through fees charged to purchasers at settlement, to establish an entity charged with maintaining open spaces in the development.[5] The plain language of the ordinance placed the responsibility for maintaining open spaces on the maintenance corporation.

Furthermore, Service Corporation's reading of the ordinance would lead to an unreasonable result. Pursuant to Section 20–70(c)(5), the developer of a given subdivision was required to be a member of the maintenance corporation and contribute to the maintenance corporation in proportion to the number of lots it owned. Service Corporation's interpretation of the ordinance would require the developer to contribute assessments to the maintenance corporation based on the number of lots it owns and to be solely responsible for maintenance while awaiting County approval of the transfer of title from the developer to the maintenance corporation. *See* NCCC Section 20–70(c)(5). Such a reading of the ordinance would nullify the provision that permits a sharing of the financial responsibility between the developer and the new homeowners while the developer owns lots in the subdivision. Service Corporation's argument is contrary to the plain meaning of the language of the ordinance and such a reading would create an incongruity in the ordinance. *See, e.g., Coastal Barge,* 492 A.2d at 1245 (stating that "each part or section [of a statute or ordinance] should be read in light of every other part or section to produce an harmonious whole").

Therefore, we conclude that the Superior Court did not err in finding that the applicable ordinance of the NCCC was not ambiguous. The plain language of the statute required the maintenance of open space in County subdivisions to be handled by a specially created maintenance corporation. Because we agree with the Superior Court that the ordinance is not ambiguous, we decline to address Service Corporation's remaining arguments regarding the proper interpretation of the NCCC and the effect of the 1995 amendments.

---

5. We also note that there is no language in the NCCC to suggest that the maintenance corporation was not to have any maintenance duties until the County approved the transfer of the open spaces from the developer to the maintenance corporation.

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.