**PLANNED PARENTHOOD OF DE-LAWARE and Janice Tildon–Burton, Plaintiffs,**

v.

**M. Jane BRADY and Gayle Franzolino, Defendants.**

No. CIV.A.03–153–SLR.

United States District Court, D. Delaware.

March 14, 2003.

Joseph A. Rosenthal, Jeffery S. Goddess, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, Counsel for Plaintiffs. Of Counsel: Eve C. Gartner, Carrie Y. Flaxman, of Planned Parenthood Federation of America, New York City.

Marc. P. Niedzielkski, A. Ann Woolfolk, of State of Delaware, Wilmington, DE, Counsel for Defendants.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On January 30, 2003, plaintiffs filed this action challenging the constitutionality of 24 Del. C. § 1794(b). The next day, the court entered a temporary restraining order preventing enforcement of the act. On February 11, 2003, a hearing was held regarding the continuation of the temporary restraining order. The court ordered a second temporary restraining order pending decision on the motion for preliminary injunction. Currently before the court is plaintiffs' motion for temporary restraining order/preliminary injunction and defendants' motions to dissolve the temporary restraining order and to dismiss. For the following reasons, the court shall grant plaintiffs' motion for preliminary injunction (D.I.3) and deny defendants' motions. (D.I.14, 32)

## II. BACKGROUND

Plaintiffs Planned Parenthood of Delaware ("Planned Parenthood") and Dr. Janice Tildon–Burton ("Dr. Tildon–Burton") provide abortion services within the State of Delaware. (D.I. 29 at ¶ 9, 10) Defendants M. Jane Brady and Gayle Franzolino are the Attorney General of the State of Delaware and the Executive Director of the Board of Medical Practice, respectively. During the week of January 27, 2003, the Board of Medical Practice notified licensed medical practitioners that it would begin investigating and assisting in prosecuting violations of 24 Del. C. § 1794(b)—the 24-hour waiting period requirement.[1]

---

1. The notice reads, in relevant part:

IMPORTANT NOTICE—LICENSEE MUST READ!!

The Attorney General has concluded that 24 Del. C. § 1794(b), though unenforceable under a United States Supreme Court case decided in 1983, is now **enforceable** based on caselaw of the United States Supreme Court decided after 1983. Please be advised that the Attorney General has requested that the Board of Medical Practice begin investigating and, in conjunction with the Attorney General's office, prosecuting violations of this law.

. . . . .

It is the intent of the Board of Medical Practice to begin investigating and assisting in prosecuting all alleged violations of 24

(D.I.15, Ex. A–6) The statute had been considered unenforceable for the past twenty (20) years.[2]

## III. STANDARD OF REVIEW

"[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988)). In ruling on a preliminary injunction, this court must consider: 1) the likelihood of success on the merits; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendant will suffer irreparable harm if the requested relief is granted; and 4) the public interest. *See Clean Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir.1995). An injunction should only issue if all four factors favor injunctive relief. *See S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 374 (3d Cir.1992).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

■ Plaintiffs claim that the medical emergency exception to the Delaware abortion statute requiring a 24–hour waiting period, 24 Del. C. § 1794, is unconstitutional as written. Defendants argue that the exception is constitutional as interpreted by the Attorney General. The court's analysis begins, as it must, with the decisions of the United States Supreme Court issued in *Planned Parenthood of Southeastern Pennsylvania v. Casey* and *Stenberg v. Carhart.*

#### 1. Supreme Court Precedent

The Supreme Court first addressed the constitutionality of 24–hour waiting periods in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In *Casey*, the petitioners argued that the Pennsylvania medical emergency exception[3] was inadequate because it prevented an abortion despite some significant health risks arguably not creating a "serious risk of substantial and irreversible impairment of a major bodily function."[4] *See id.* at 880, 112 S.Ct. 2791. The Court upheld the

---

Del. C. § 1794(b) that occur as of the date of this notice.
(D.I.15, Ex. A–6) (emphasis in original)

**2.** In 1983, the Delaware Attorney General opined that the 24–hour waiting period mandate was unconstitutional and, therefore, unenforceable in light of the Supreme Court's opinion in *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). *Akron* was later overruled by the Supreme Court in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

**3.** Pennsylvania defined "medical emergency" as

[t]hat condition which, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death **or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function.**
*Casey*, 505 U.S. at 879, 112 S.Ct. 2791 (quoting 18 Pa. Cons.Stat. § 3203 (1990) (emphasis added)).

**4.** The significant health risks specifically identified (preeclampsia, inevitable abortion, and premature ruptured membrane), along with ectopic pregnancy, are the same risks identified by plaintiffs in the case at bar. (D.I. 7 at 4–10)

provision, concluding that "as construed by the Court of Appeals, the medical emergency definition imposes no undue burden on a woman's abortion right."[5] *See id.* However, the majority opinion also stated that,

> [i]f the [petitioner's] contention were correct, we would be required to invalidate the restrictive operation of the [medical emergency] provision, for the essential holding of *Roe* forbids a State to interfere with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute **a threat to her health.**

*Id.* (citing *Roe v. Wade,* 410 U.S. 113, 164, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Harris v. McRae,* 448 U.S. 297, 316, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980)) (emphasis added).

The Supreme Court reaffirmed the need for a medical emergency exception in *Stenberg v. Carhart,* 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000).

> The *Casey* plurality opinion reiterated what the Court held in *Roe;* that " 'subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion **except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.'** "

530 U.S. at 930, 120 S.Ct. 2597 (quoting *Casey,* 505 U.S. at 879, 112 S.Ct. 2791) (emphasis in original). The Court concluded that the Nebraska statute at issue was unconstitutional due to lack of a health exception.

> In sum, Nebraska has not convinced us that a health exception is never necessary to preserve the health of women . . . . [W]here substantial medical authority supports the proposition that banning a particular abortion procedure could endanger women's health, *Casey* requires the statute to include a health exception when the procedure is necessary, in appropriate medical judgment, for the preservation of the **life or health** of the mother. Requiring such an exception in this case is no departure from *Casey,* but simply a straightforward application of its holding.

5. The Third Circuit Court of Appeals interpreted the medical emergency provision as follows:

> Moreover, we read the medical emergency exception as intended by the Pennsylvania legislature to assure that compliance with its abortion regulations would not in any way pose **a significant threat to the life or health of a woman.** We believe it should be interpreted with that objective in mind. While the wording seems to us carefully chosen to prevent negligible risks to life or health or significant risks of only transient health problems from serving as an excuse for noncompliance, we decline to construe "serious" as intended to deny a woman the uniformly recommended treatment for a condition that can lead to death or **permanent injury.** The essence of the definition in § 3203 is that it allows a woman and her doctors to forego many of the Act's requirements when there is a medical emergency to the woman's **physical health,** and that includes where a woman has symptoms of preeclampsia, inevitable abortion, or prematurely ruptured membrane. We interpret § 3203 to allow women and doctors to forego the Act's requirements when a woman is diagnosed as having one of these conditions. If the Commonwealth were to choose, in contradiction to its representations to this court, to prevent doctors and women from foregoing the Act's requirements when a woman has been so diagnosed, that application would almost certainly be unconstitutional under present Supreme Court law.

*Planned Parenthood of Southeastern Pennsylvania v. Casey,* 947 F.2d 682, 701 (3d Cir. 1991), *overruled by,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (emphasis added).

*Stenberg,* 530 U.S. at 937–38, 120 S.Ct. 2597 (internal citations and quotations omitted) (emphasis added). With this background, the court turns to the medical emergency provision at issue.

### 2. Analysis

The parties agree, as they must, that a medical emergency exception is required for the 24–hour waiting period to pass constitutional muster. Delaware's medical emergency exception provides:

> No abortion may be performed on a woman within 24 hours after giving written consent pursuant to subsection (a) of this section unless, in the opinion of her treating physician, **an emergency situation presenting substantial danger to the life** of the woman exists.

24 Del. C. § 1794(b) (emphasis added).

State statutes are to be interpreted according to state law. The Delaware Supreme Court has held that "[w]ords used in a statute that are undefined should be given their ordinary, common meaning." *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d 1242, 1245 (Del. 1985) (citing *Diamond v. Chakrabarty,* 447 U.S. 303, 308, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980); *Bailey v. State,* 450 A.2d 400, 402 (Del.1982)). Furthermore, "[w]hen the language and intent of a statute are clear, no ambiguity exists and the Court will not engage in construing or interpreting the statute. If a statute is unambiguous, the plain meaning of the statute controls." *Newtowne Village Service Corp. v. Newtowne Road Development Co., Inc.,* 772 A.2d 172, 175–76 (Del.2001) (internal citations omitted).

Despite the obvious differences in language used, defendants nevertheless contend that "[t]he literal meaning of the Delaware and Pennsylvania health of the mother exception[s] is that each covers substantial and irreversible impairment of a major bodily function because any such impairment must be a substantial danger to the life of the mother." (D.I. 33 at 10) Defendants have not provided any evidence of legislative intent to support this argument; the one medical affidavit submitted is contradicted by plaintiffs' medical evidence. The court, therefore, confines its analysis to the plain language of the statute as chosen by the Delaware legislature. And it is evident from the record that the actual language chosen by the legislature cannot be reconciled with defendants' proposed interpretation when viewed in light of Supreme Court precedent and other Delaware statutes.

Significantly, in *Casey,* the Third Circuit held that the Pennsylvania "abortion regulations would not in any way pose a significant threat to the **life or health** of a woman." 947 F.2d at 701 (emphasis added). The Third Circuit's language regarding "life or health" tracks the language consistently employed by the Supreme Court since *Roe. See e.g., Roe,* 410 U.S. at 164–65, 93 S.Ct. 705; *Casey,* 505 U.S. at 846, 851, 872, 879–86, 112 S.Ct. 2791; *Stenberg,* 530 U.S. at 930–38, 120 S.Ct. 2597. Contrary to defendants' position, which makes the Supreme Court's insertion of the word "health" mere surplusage, it is clear that the Supreme Court has focused on the need for a "health" exception. *See Stenberg,* 530 U.S. at 931, 120 S.Ct. 2597 ("[T]his court has made clear that a State may promote but not endanger a woman's **health** when it regulates the methods of abortion.") (emphasis added) (citing *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 768–69, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986); *Colautti v. Franklin,* 439 U.S. 379, 400, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 76–79, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Doe v. Bol-*

*ton,* 410 U.S. 179, 197, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)).

Not only has the Supreme Court chosen its words carefully, specifically protecting a woman's "health" and not just her "life," but it is evident that when the Delaware General Assembly wanted to include a health exception within the Delaware abortion laws, it clearly understood the text required to do so. For instance, in 24 Del. C. § 1782, the legislature defined "medical emergency" for purposes of subchapter VIII, the parental notification of abortion act, as "that condition which, on the basis of the physician or other medically authorized person's good faith clinical judgment, so complicates the medical condition of the pregnant minor as to necessitate the immediate abortion of her pregnancy to avert her death **or for which delay will create serious risk of substantial and irreversible impairment of a major bodily function.**" *Id.* (emphasis added). In 24 Del. C. § 1787, the legislature provided that "[t]he requirements of § 1783, § 1784 and § 1786 of this title shall not apply when, in the best medical judgment of the physician or other medically authorized person, based on the facts of the case, a medical emergency exists that so complicates the pregnancy as to require an immediate abortion." The Delaware General Assembly has also demonstrated that "life" and "life or health" be ascribed different meanings based on the numerous uses of the phrase "life or health" throughout the Delaware Code. *See* plaintiffs' supplemental brief at 11–12 (listing twelve different sections using words "life or health" or "life and health"). (D.I. 30 at 11–12)

By choosing to use language that does not specifically address dangers to a woman's health, the legislature has run afoul of a constitutional mandate. The language of § 1794(b) is clear and unambiguous. Defendants' arguments notwithstanding, the record is devoid of a single example where the word "life" has been judicially interpreted to include concerns for the "health" of a mother. The court cannot construe the ordinary meaning of the statute broadly enough to be constitutional without impermissibly rewriting § 1794(b), nor can the court add a health exception to the statute.[6] *See Vari v. Food Fair Stores, New Castle Inc.,* 205 A.2d 529, 531 (Del. 1964) ("We cannot, however, under the guise of construction, create additions to or exceptions from a statute which are not expressly or impliedly included therein.").

In sum, a doctor reviewing § 1794(b) would reasonably conclude that the statute does not permit a departure from the 24–hour waiting period if the risk is to the health or well-being of the mother as opposed to a "substantial danger to the life" of the mother. Because the statute "forecloses the possibility of an immediate abortion despite some significant health risks," *Casey,* 505 U.S. at 880, 112 S.Ct. 2791, the statute places an undue burden upon a woman seeking an abortion.

## B. Balancing the Harms

■ The risk of irreparable harm to plaintiffs is clear in a case such as the one at bar. Absent a constitutionally required health exception, women in Delaware will be at risk for additional medical complica-

---

**6.** The court is not persuaded by the Attorney General's representation that she will enforce § 1794(b) consistent with the constitution, regardless of whether its language is consistent with the constitution. Aside from the troubling admission by the Attorney General that it is the Board of Medical Practice, and not

her office, that enforces the statute, such a representation is neither binding nor does it have the force of law, at least absent a written opinion and policy statement. *See, e.g., Delaware Women's Health Organization, Inc. v. Wier,* 441 F.Supp. 497, 499 n. 9 and 501 (D.Del.1977).

tions if the physician is required to wait 24 hours to provide a medically necessary abortion.

Defendants, of course, are not at risk to suffer any harm, but represent the important interests of the public in having the 24-hour waiting period enforced. In this regard, there is no dispute presented on the record that abortion services, like any other medical services, can only be provided when there is informed consent, consistent with the provisions of § 1794(a). (D.I. 25 at 32) The court recognizes that irreparable harm (undergoing an abortion without true informed consent) is a risk attendant to not enforcing the 24-hour waiting period. In weighing the harms, however, the court takes into consideration the fact that § 1794(b) has not been enforced for 20 years, was deemed "enforceable" through an administrative directive without any apparent reappraisal by the legislative branch, and presents a defect that can be easily cured by legislative action. Given all of these considerations, in light of the fact that the court cannot enforce the 24-hour waiting period without judicially rewriting the statute, the court concludes that the balance of harms weighs in favor of injunctive relief.

## C. Rule 65

■ Defendants contend that the current restraining order does not comply with Rule 65. According to defendants, plaintiffs must post security. In addition, defendants argue that the current restraining order is invalid because it is too broad.

Federal Rule of Civil Procedure 65 states, in relevant part:

(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

(d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed.R.Civ.P. 65(c), (d).

The court has found that the balance of the equities favors plaintiffs in this case. The court further finds that "[t]he equities of potential hardships to the parties ... weighe[s] in favor of waiving the bond requirement." *Temple University v. White,* 941 F.2d 201, 220 (3d Cir.1991). Thus, the security requirement under Rule 65(c) is waived. As explained above, the scope of the injunction is necessary to address a constitutional defect, a defect that can be corrected by the Delaware General Assembly.

## D. Case or Controversy

■ Defendants argue that plaintiffs lack standing because plaintiffs have not suffered any personal injury. This argument is without merit. The Third Circuit has noted the "well-established precedent for the proposition that abortion providers have third party standing to assert the rights of their patients in the face of governmental intrusion into the abortion decision in order to determine whether such

interference would constitute an undue burden." *Planned Parenthood of Central New Jersey v. Farmer,* 220 F.3d 127, 146 (3d Cir.2000). Regardless of Planned Parenthood's standing, Dr. Tildon–Burton clearly has standing based on the notice that "[i]t is the intent of the Board of Medical Practice to begin investigating and assisting in prosecuting all alleged violations of 24 Del. C. § 1794(b) that occur as of the date of this notice." (D.I.15, Ex. A–6) As Dr. Tildon–Burton has standing, it is unnecessary for the court to further address whether Planned Parenthood has standing as well. *Farmer,* 220 F.3d at 147 n. 10 ("We need not address this argument, buried within and argued exclusively in footnotes, because it is uncontested that the plaintiff physicians perform abortions and, therefore, at least they have standing to assert the claims.") (citing *Doe v. Bolton,* 410 U.S. 179, 189, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)).

## V.  CONCLUSION

For the reasons stated, the court concludes that Delaware's 24–hour waiting period mandate, 24 Del. C. § 1794(b), is unconstitutional as written. Therefore, defendants are enjoined from enforcing the mandate in accordance with the order issued this day.

### ORDER

At Wilmington this 14th day of March, 2003, for the reasons stated in the memorandum opinion issued this same date,

IT IS ORDERED that plaintiffs' motion for a preliminary injunction (D.I.3) is granted. Defendants are hereby enjoined from enforcing the 24–hour waiting period to obtain an abortion pursuant to 24 Del. C. § 1794(b).