# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DECEMBER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) C.A. No. 10635-VCG | |
| | ) | |
| WILD MEADOWS HOME OWNERS | ) | |
| ASSOCIATION and DELAWARE | ) | |
| MANUFACTURED HOME | ) | |
| RELOCATION AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 25, 2015
Date Decided: December 22, 2015

Michael P. Morton, of MICHAEL P. MORTON, P.A., Greenville, DE, *Attorney for the Plaintiff*.

James G. McGiffin, Jr., of COMMUNITY LEGAL AID SOCIETY, INC., Dover, DE, *Attorney for Defendant Wild Meadows Home Owners Association*.

William A. Denman, of PARKOWSKI, GUERKE & SWAYZE, P.A., Dover, DE, *Attorney for Defendant Delaware Manufactured Home Relocation Authority*.

GLASSCOCK, Vice Chancellor

This matter involves the construction of a statute as a matter of first impression. The statute is 25 *Del. C.* § 7043(c), a portion of the Rent Justification Act, which involves "manufactured homes" on leased land in "manufactured home communities"; it provides a right to arbitration for any home owner, or "the home owners' association" acting on behalf of any home owner, to contest certain ground rent increases. The remaining Defendant here is a home owners' association ("HOA") representing tenants in a community covered by the act, and it purported to demand arbitration on behalf of many home owners in that community. It is not, however, the sole HOA in the community, and another HOA, not the Defendant, is registered as the community HOA with a state authority, the Delaware Manufactured Home Relocation Authority. The Plaintiff, the community owner, argues that the "registered" HOA is "*the* home owners' association" referred to by statute, and seeks a declaratory judgment that the Defendant lacks standing under the statute and thus that its arbitration demand was a nullity. The Defendant contends it had standing and properly compelled arbitration under the statute. The parties have filed cross Motions for Summary Judgment. For the following reasons, the Defendant's motion is granted and the Plaintiff's is denied.

1

# I. BACKGROUND FACTS

## A. *The Parties*

Plaintiff December Corporation ("December Corp.") is a Pennsylvania corporation whose principal business is to manage and maintain housing communities.[1] December Corp. manages the Wild Meadows manufactured housing community ("Wild Meadows"), which is an "active adult manufactured housing community"[2] located in Dover, Delaware.[3]

Defendant Wild Meadows Home Owners Association ("WMHA") is an incorporated association made up of a group of residents of Wild Meadows.[4] Defendant Delaware Manufactured Home Relocation Authority (the "Authority") is a statutorily created authority of the State of Delaware.[5]

## B. *The Rent Justification Act*

In 2013, the Delaware General Assembly enacted the Rent Justification Act

---

[1] Compl. ¶ 8.

[2] In this Memorandum Opinion, I use the statutory terms "manufactured housing" and "manufactured housing community" to refer, generally, to what most speakers of American English would call "house trailers" and "trailer parks." As a former resident of a trailer park—Camelot (the Rehoboth-area park, not the once-and-future kingdom)—I see no stigma in using the vernacular terms, but I use the statutory terms for purposes of clarity. In any event, I note that Wild Meadows seems to be an upscale park, and that the homes there in no way resemble traditional house trailers.

[3] Compl. ¶ 8.

[4] *Id.* at ¶ 9. WMHA was unincorporated during many of the relevant events described herein. WMHA incorporated on February 11, 2015 at the direction of an arbitrator's decision, which said that WMHA could incorporate to cure a "procedural defect" identified therein. Def. WMHA's Supp. Letter 2–3. Nonetheless, WMHA is an incorporated association as of the date of this Memorandum Opinion.

[5] Compl. ¶ 10.

(the "Act").[6] The Act requires the owners of manufactured home communities ("Community Owners") to "justify" certain increases in annual rents that Community Owners charge to manufactured home owners who lease the land.[7] Pursuant to the Act, if a Community Owner seeks to increase annual rents by an amount greater than the three-year average increase in the Consumer Price Index (the "CPI-U"),[8] the Community Owner must justify the increase by meeting one of eight statutory justifications.[9]

In order to perfect *any* increase in rent, the Act requires that Community Owners follow specific procedures to notify its residents. At least 90 days before the effective date of a proposed rent increase, the Community Owner must send a notice to three parties: the affected home owners, the HOA, and the Authority.[10] If the proposed rent increase exceeds the three-year average increase in the CPI-U, the Community Owner must also schedule a meeting between the parties to "discuss the reasons for the increase."[11] The meeting must be held within 30 days of sending the notice of the proposed rent increase.[12] Finally, within 30 days of the meeting, any

---

[6] 25 *Del. C.* § 7040.
[7] *Id.* § 7042.
[8] Specifically, the Act refers to the "the average annual increase of the Consumer Price Index For All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area ("CPI-U") for the most recently available preceding 36-month period." *Id.* § 7402.
[9] *Id.* § 7042.
[10] *Id.* § 7403(a).
[11] *Id.* § 7403(b).
[12] *Id.* § 7403(b).

dissenting home owner or the HOA representing any dissenting home owner may petition the Authority to appoint an arbitrator to conduct nonbinding arbitration proceedings.[13]

*C. December Corp. Increases Rents in Wild Meadows*

In 2014, December Corp. contemplated raising the rents at Wild Meadows by an amount greater than the three-year average increase in CPI-U. On October 24, 2014, December Corp. sent a letter to each Wild Meadows home owner that included a notice of the rent increase and set forth an upcoming meeting to discuss its justification.[14] In addition, December Corp. sent a notice to Wild Meadows Land Owners, Inc.—an entity separate from WMHA—which was the only HOA registered with the Authority.[15]

December Corp. held the meeting of home owners on November 10, 2014.[16] At the meeting, December Corp. directed home owners to provide information on a sign-in sheet. The sign-in sheet included a field to indicate whether the home owner was represented by an HOA, but it did not specify a particular HOA. Approximately 191 participants of the meeting checked the "HOA" column.[17]

---

[13] *Id.* § 7403(c).
[14] Compl. ¶ 25.
[15] *Id.* at ¶ 25.
[16] *Id.* at ¶ 26.
[17] Def. WMHA's Opening Br., App. A, at 34–49.

4

WMHA, which was not registered with the Authority,[18] submitted a petition for arbitration to the Authority within 30 days of the meeting.[19] Thereafter, the Authority assigned the matter Docket No. 5-2014 and appointed Ciro Poppiti, Esquire (the "Arbitrator"), to arbitrate the rent increase.[20] During an initial telephone conference between the Arbitrator and the parties, December Corp. objected to the exercise of jurisdiction because WMHA was not properly registered with the Authority.[21] Following briefing on the issue, the Arbitrator issued a written ruling on February 6, 2015, in which he concluded that he had jurisdiction to arbitrate the matter.[22] Later that day, the Arbitrator notified the parties that he would proceed

---

[18] According to the Plaintiff, it located the registered HOA for notice purposes on a list that is publicly available on the Authority's website, which did not include WMHA. Compl. ¶ 25. Despite the Plaintiff's contention, WMHA argues that it was, in fact, registered with the Authority. To support its argument, WMHA submitted a letter, dated September 24, 2008, which indicated that WMHA had registered with the Authority around that time. *See* Def. WMHA's Opening Br., App. A, at 67. WMHA argues that the Authority mistakenly failed to publish WMHA as a registered HOA on its website. However, WMHA failed to submit the exhibit that it cited in its answering brief (App. A-11) to support this contention. Moreover, WMHA failed to defend this argument in its reply brief and at oral argument. Instead, WMHA appeared to concede that it was not a "registered" HOA. Therefore, I assume for purposes of this decision that WMHA was not registered at the time it filed its petition with the Authority.

[19] Compl. ¶ 28. The petition indicated that it was filed "on behalf of the Board of Directors" of WMHA. *Id.*

[20] *Id.* at ¶ 29.

[21] *Id.* at ¶ 32.

[22] *Id.* at ¶ 32. In WMHA's answering brief to the motion to dismiss before the Arbitrator, it suggested that any potential procedural defects—such as the fact that WMHA was not registered—could be cured by joining the registered HOA, or substituting it for WMHA pursuant to "the principle underlying Superior Court Civil Rule 17." *See* Def. WMHA's Supp. Letter 2–3. December Corp. argues that WMHA failed to formally request to join or substitute a party and denies that a mechanism exists that would have allowed WMHA to do so in the arbitration. *See* Pl.'s Supp. Letter 3. In his written decision, the Arbitrator found that WMHA was the official HOA and that WMHA could cure "the procedural defect" by incorporating, which it did the same day. Def. WMHA's Supp. Letter 2–3. Given my decision here, I need not making any findings

5

with the arbitration on February 12, 2015.[23] Two days before the arbitration proceedings were to commence, December Corp. filed its Complaint here, seeking, among other things, an injunction to enjoin the parties from proceeding with the arbitration and a declaration that the rent dispute is not subject to arbitration.[24]

The arbitration proceeding took place on February 12, 2015.[25] On March 30, 2015, the Arbitrator issued his ruling that denied the rent increase for those home owners who had indicated that they were represented by an HOA at the November 10, 2014 meeting.[26] Thereafter, December Corp. filed an appeal of the Arbitrator's decision with the Superior Court, and they have since submitted a stipulated request with that Court to stay the appeal, pending my decision here.[27]

## II. PROCEDURAL HISTORY

The Plaintiff filed its Verified Complaint on February 10, 2015, which included a Motion for a Temporary Restraining Order. I heard oral argument on that motion on February 11, 2015—the day before the arbitration was to proceed—and I denied the motion from the bench.[28] The Defendant Authority filed its Verified

---

as to whether WMHA made an official request in its answering brief, nor do I need to find that a mechanism existed that would have allowed the registered HOA to be joined or substituted.

[23] Compl. ¶ 32.

[24] *Id.* at 20.

[25] Pl.'s Opening Br. 19.

[26] *Id.*

[27] *See December Corp v. Wild Meadows Home Owners Assoc.*, C.A. No. 10635-VCG (Sept. 23, 2015) (LETTER).

[28] *December Corp. v. Wild Meadows Home Owners Assoc.*, C.A. No. 10635-VCG (May 1, 2015) (TRANSCRIPT).

Answer on February 25, 2015.

The Plaintiff filed its Motion for Summary Judgment on April 9, 2015. Defendant WMHA later filed a Motion to Dismiss or Cross-Motion for Summary Judgment on May 13, 2015. Following briefing by the parties, I heard oral argument on the motions on September 21, 2015. At oral argument I dismissed the counts against the Authority from the bench. Additionally, I asked the remaining parties to submit supplement briefing.[29] The parties simultaneously submitted letter memoranda on September 25, 2015. This is my Memorandum Opinion.

### III. STANDARD OF REVIEW

The Court will grant a motion for summary judgment when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[30] In deciding a motion for summary judgment, the moving party has the burden of demonstrating that there is no material issue of fact.[31] Furthermore, the Court must view the facts in the light most favorable to the nonmoving party.[32] I note that both of the parties here have moved for

---

[29] Specifically, I asked the parties to supplement the record as to whether WMHA made a timely application to add or substitute the registered HOA. I have already described the parties' positions on this issue and have decided I need not make a determination of this issue in my decision here. *See supra* note 22.

[30] Ct. Ch. R. 56(c). *See e.g.*, *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009).

[31] *See e.g.*, *Bank of New York Mellon v. Realogy Corp.*, 979 A.2d 1113, 1119 (Del. Ch. 2008).

[32] *See e.g.*, *LaPoint*, 970 A.2d at 191.

summary judgment.[33]

## IV. ANALYSIS

### A. *The Plaintiff's Allegations*

The Plaintiff alleges two counts in its Complaint. In Count I, the Plaintiff argues that the arbitration proceeding was improper because WMHA did not have standing to petition the Authority. The Plaintiff seeks injunctive relief to enjoin the Defendants from proceeding with the arbitration—which was pending at the time of the Complaint—and a declaratory judgment that WMHA lacked standing to petition the Authority for arbitration. At this point in the litigation, I am unable to grant the Plaintiff injunctive relief because the Arbitrator has already issued his decision and the proceeding has thus concluded.[34] However, the declaratory relief that the Plaintiff seeks remains available, if appropriate.[35]

In Count II, the Plaintiff alleged that the Authority has wrongfully appointed arbitrators since the implementation of the Act. The Plaintiff sought positive

---

[33] WMHA has asked that the Court "grant its motion to dismiss Plaintiff's complaint or, in the alternative, enter summary judgment" in its favor. Def. WMHA's Reply Br. 14. For purposes of this Memorandum Opinion, I will treat WMHA's motion as a motion for summary judgment.

[34] *See In re Digex Inc. S'holder Litig.*, 789 A.2d 1176, 1215 (Del. Ch. 2000) (noting that an injunction would be improper where the wrongful conduct has already occurred); *see generally* Wolfe and Pittenger, § 10–2(a), 693–94, citing 1 J.L. High, A Treatise On The Law Of Injunctions (4th ed. 1905) (preliminary injunctive relief has no application where the act complained of has already occurred).

[35] I note that the Plaintiff's opening brief and reply brief sought only injunctive relief. However, based on discussion of the Plaintiff's allegations during oral argument, I find that the application for declaratory judgment—which was unambiguously included in the Plaintiff's Complaint—is subject to the motions for summary judgment here.

8

injunctive relief that would direct the Authority in future cases to determine, in the first instance, whether a petitioner has standing and whether there is jurisdiction over the respondent to appoint an arbitrator. At oral argument, I found that these allegations sought relief for parties that were not before the Court, and that to grant the Plaintiff relief would require that I inappropriately issue an advisory opinion.[36] For this reason, and for the reasons stated from the bench, I granted summary judgment in favor of the Authority as to Count II and released the Authority as a party.[37]

The rest of this Memorandum Opinion addresses the one issue that remains before me: Did WMHA have standing under the Act to petition the Authority and thereby arbitrate the justification of December Corp.'s rent increase? In order to address this issue, I must first determine that I have subject matter jurisdiction to hear the case.

### B. Subject Matter Jurisdiction

WMHA contends that an adequate remedy exists at law, and that this court is therefore without jurisdiction to entertain the Plaintiff' claims. The Delaware Court of Chancery is a court of limited jurisdiction.[38] The Court may have subject matter

---

[36] *See Stroud v. Milliken Enters. Inc.*, 552 A.2d 476, 479–80 (Del. 1989).

[37] Oral Arg. Tr. 67 (unofficial transcript). I note that oral argument on the Motions for Summary Judgment was held on September 21, 2015, but none of the parties requested an official copy of the transcript.

[38] *See e.g.*, *El Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*, 669 A.2d 36, 39 (Del. 1995) (citing *DuPont v. DuPont*, 85 A.2d 724, 729–30 (Del. 1951)).

jurisdiction in one of three circumstances: "(1) the invocation of an equitable right; (2) a request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter jurisdiction."[39] When the question of subject matter jurisdiction is raised, the plaintiff bears the burden of establishing this Court's jurisdiction.[40] Here, the Plaintiff has not alleged that jurisdiction is conferred by statute. Instead, the Plaintiff argues that jurisdiction attaches because the Court of Chancery is the only court in which the Plaintiff can seek relief, whether by injunction (which relief I have already denied) or declaratory judgment. I agree.

Within the Act is a provision that affords affected parties the right to appeal an arbitrator's decision to the Superior Court. Specifically, the Act states:

> The community owner, the home owners' association, or any affected home owner may appeal the decision of the arbitrator within 30 days of the date of issuance of the arbitrator's decision. The appeal shall be to the Superior Court in the county of the affected community. The appeal shall be on the record and the Court shall address written and/or oral arguments of the parties as to whether the record created in the arbitration is sufficient justification under the Code for the community owner's proposed rental increase in excess of CPI-U.[41]

The Plaintiff argues that in *Pot-Nets Coveside Homeowners Association v. Tunnell Compsanies, L.P.*,[42] the Superior Court defined the scope of appellate review, which

---

[39] *Gladney v. City of Wilmington*, 2011 WL 6016048, at *3 (Del. Ch. Nov. 30, 2011) (internal citations omitted).
[40] *Pitts v. City of Wilmington*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009) (citing *Yancey v. Nat'l Trust Co.*, 1993 WL 155492, at *6 (Del. Ch. May 7, 1993)).
[41] 25 *Del. C.* § 7044.
[42] 2015 WL 3430089 (Del. Super. May 26, 2015).

10

does not encompass the review sought here. In *Tunnell*, the Superior Court was asked to determine what constitutes a timely petition for arbitration under the Act. The court never reached that determination, however, because it held that the issue fell outside the Superior Court's jurisdiction as proscribed by the plain language of the statute.[43] The court found that the General Assembly unambiguously limited the scope of the Superior Court's appellate review to include only the determination of "whether the record created in the arbitration is sufficient justification under the Code for the community owners' proposed rental increase in excess of the CPI-U," and purposefully excluded any other topic.[44] Here, the Plaintiff allegedly has been aggrieved by the Authority's decision, upon WMHA's demand, to refer this matter to arbitration. Accordingly, the Plaintiff has asked this Court to determine whether WMHA, a non-registered HOA, had standing to seek arbitration pursuant to the Act. I find that this issue does not fit within the scope of the Superior Court's appellate review, as defined in *Tunnell*. As a result, the Plaintiff does not have an adequate remedy at law and, therefore, this Court has jurisdiction to craft an equitable remedy.[45]

---

[43] *Id.* at *5.

[44] *Id.* at *6.

[45] I note that the Defendants argue that the Plaintiff has an adequate remedy at law because it can petition the Superior Court to issue an extraordinary remedial writ. However, this argument fails to recognize the breadth of the decision in *Tunnell*, which precludes the Superior Court from hearing "*anything* other than whether a community owner's proposed rent increase above the CPI-U is justified." *Id.* at *6 (emphasis added).

11

*C. Standing Under the Act*

Since I have determined that jurisdiction is proper, I now consider the merits of the Plaintiff's argument that WMHA did not have standing to petition the Authority for arbitration. The Plaintiff asserts that WMHA lacked standing because the clear, unambiguous language of the Act, and the related regulations promulgated by the Authority, limit standing to only those HOAs that are registered with the Authority. Section 7043(c) of the Act states, in part, the following:

> After the informal meeting, any affected home owner who has not already accepted the proposed increase, or *the home owners' association* on the behalf of 1 or more affected home owners who have not already accepted the proposed increase may, within 30 days from the conclusion of the final meeting, petition the Authority to appoint a qualified arbitrator to conduct nonbinding arbitration proceedings.[46]

Therefore, in order to determine whether WMHA has standing to petition the authority, I must determine the meaning of "the home owners' association" as used in Section 7043(c).

Our Supreme Court has held that statutory interpretation is ultimately the responsibility of the courts.[47] In carrying out this responsibility, the plain language of a statute should control the Court's interpretation unless the statute is ambiguous.[48] A statute is considered ambiguous if "it is reasonably susceptible of

---

[46] 25 *Del. C.* § 7043(c) (emphasis added).
[47] *Pub. Water Supply v. DiPasquale*, 735 A.2d 378, 382 (Del. 1999).
[48] *Newtowne Vill. Serv. Corp. v. Newtowne Road Dev. Co., Inc.*, 772 A.2d 172, 175 (Del. 2001) ("Only where a statute is ambiguous and its meaning cannot be clearly ascertained does a court engage in the process of statutory construction and interpretation.").

12

different conclusions or interpretations" or "if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature."[49] If an administrative body has given an interpretation of a statute administered by it, the reviewing court "may accord due weight, but not defer, to an agency interpretation.[50] Moreover, "[a] reviewing court will not defer to such an interpretation as correct merely because it is rational or not clearly erroneous."[51]

As a threshold matter, I find that the statute is ambiguous because the term "the home owners' association" is unclear in the context here, where two HOA's exist for owners in a single park. The term "home owners' asscociation" is undefined in the Act and, therefore, I must consider the term's plain meaning, if any. According to the Plaintiff, the plain meaning of the term must refer to a single and specific HOA because the General Assembly purposefully used the definite article "the." This argument, by itself, is unavailing. This Court has recognized that the use of the definite article "the" does not always denote a singular interpretation.[52] In this case, "the home owner's association" could refer to a single HOA; but it also could be interpreted to refer to *the* HOA filing the petition, which may be one among

---

[49] *LeVan v. Independence Mall, Inc*. 940 A.2d 929, 932–33 (Del. 2007) (citing *Newtowne Vill. Serv. Corp.*, 772 A.2d at 175).
[50] *DiPasquale*, 735 A.2d at 382.
[51] *Id.*
[52] *Wilmington Savings Fund Soc'y v. Foresight Energy LLC*, 2015 WL 7889552, at *8 (Del. Ch. Dec. 4, 2015) (noting that "a person may be called 'the owner,' even if that person is not necessarily 'the sole owner.'").

multiple HOAs in the community. Based on the plain language alone, I cannot determine the meaning intended by the legislature. Therefore, the term is ambiguous and I must determine the term's meaning by construing it "in a way that will promote its apparent purpose and harmonize it with other statutes within the statutory scheme."[53]

When interpreting undefined terms, the Court must assign to them a "reasonable and sensible meaning in light of their intent and purpose."[54] Section 7040 of the Act provides for its purpose and states, in part, the following:

> Through this subchapter, the General Assembly seeks to protect the substantial investment made by manufactured home owners, and enable the State to benefit from the availability of affordable housing for lower-income citizens, without the need for additional state funding. The General Assembly also recognizes the property and other rights of manufactured home community owners, and seeks to provide manufactured home community owners with a fair return on their investment. *Therefore, the purpose of this subchapter is to accommodate the conflicting interests of protecting manufactured home owners, residents and tenants from unreasonable and burdensome space rental increases while simultaneously providing for the need of manufactured home community owners to receive a just, reasonable and fair return on their property.*[55]

Based on the purpose provided in the statute itself, the General Assembly expressly intended to expand protection for manufactured home owners while simultaneously

---

[53] *LeVan*, 940 A.2d at 933 (citing *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)) (quotation omitted).

[54] *Angstadt v. Red Clay Consol. School Dist.*, 4 A3d 382, 390 (Del. 2010) (citing *E.I. Du Pont De Nemours & Co. v. Clark*, 88 A.2d 436, 438 (Del.1952)).

[55] 25 *Del. C.* § 7040 (emphasis added).

14

preserving the Community Owners right to a fair return on their property. The statute accomplishes that purpose by allowing rent increases above the inflation rate, but only where justified by statutory factors. It allows for enforcement of this mechanism through a low-cost alternative, arbitration. Finally, it broadly conveys the right to seek such arbitration on "any [dissenting] affected home owner" or on "the home owners' association on behalf of 1 or more [dissenting] affected home owner." This to me evinces an intent on the part of legislature to broadly provide access to arbitration to home owners or those representing them. Due to the expansive purpose of the statute, I find that the General Assembly did not intend to restrict the availability of arbitration to only a single HOA per park, or to an HOA that has registered with the Authority; so long as an HOA represents a dissenting home owner, it may seek arbitration, as could the home owner herself.

In interpreting the statute, I must also consider the General Assembly's stated intent to preserve the Community Owner's interest in a fair return on their property. It is not clear to me—and the Plaintiff has not attempted to argue—that a requirement that an HOA register with the Authority would support this intent, or would otherwise provide any benefit to the Community Owner, other than to establish a technical requirement that could be exploited in litigation.[56] The latter intent on the

---

[56] At first blush, one apparent benefit to a Community Owner of the construction advanced here by the Plaintiff would be to prevent a vexatious multiplicity of arbitrations arising from a single rent-increase proposal. This benefit is illusory, for two reasons. First, the statute provides that

15

part of the legislature is highly unlikely. Therefore, a broad interpretation of "the home owners' association" complies with the General Assembly's intent to balance the interests of home owners and Community Owners, and to provide broad resort to arbitration with regard to rent increases greater than the cost of living.

In addition, if the General Assembly had intended to add a registration requirement for those HOAs entitled to seek arbitration on behalf of home owners, or to limit the right to arbitration to a single HOA per community, an examination of the statutory scheme reveals that it knew how to do so. In Section 7026(b), the General Assembly expanded the rights of home owners by imposing a statutory obligation on community owners intending to sell all or part of the community to make a first offer to the HOA. The statute provides that the first offer must be made to the HOA that has registered with the Authority for that community.[57] Because

---

each home owner may file a separate arbitration demand; regardless of how "the home owners' association" is construed, there are potentially as many petitioners as there are home owners in the park. Second, and more fundamentally, the evil of multiple arbitrations arising from a single rent increase is addressed in the Authority's regulations. In 1 *Del. Admin. C.* §202(7.7), the Authority requires a single arbitration fee for multiple leaseholders affected by the same proposed rent increase. Additionally, Subsection (7.6) gives the Arbitrator authorization to consolidate cases when a proposed rent increase will affect leaseholders at different time periods. These Subsections provide a mechanism to consolidate multiple petitions, while also maintaining the broad access that the General Assembly intended. Therefore, the registration requirement advocated by the Plaintiff here would be unnecessary and ineffective to address any multiplicity of arbitrations.

[57] 25 *Del. C.* § 7026(b)(2)(a) requires that the HOA must be registered in order to participate:

> There can be only 1 home owner association per community eligible to participate in the process of this section. That home owner association *must register with the Delaware Manufactured Home Relocation Authority* as prescribed by the Authority. The first association to register in compliance with the requirements of this section will be the official home owner association eligible to participate in the process. (emphasis added).

that provision imposes a duty on the community owner, it makes sense to have only one entity for the community owner to deal with, a consideration not present with respect to the statute under consideration here, which involves a provision that broadly assigns a right to relief for home owners. The provision in Section 7026 is noteworthy for our purposes, however, as it demonstrates that if the General Assembly had intended to include similar restrictions in Section 7043, it likely would have indicated its intention in the statute.

The Plaintiff argues that the meaning of "the home owner's association" in the Act should be interpreted by using the definition purportedly assigned to the term in the Authority's regulations in 1 *Del. Admin C.* § 202 (the "Regulations"), which applies to demands for rent-increase arbitration. Section 2 therein defines certain terms for purposes of the Regulations.[58] Within this section, the term "HOA" is defined as "a home owners association registered with the Authority pursuant to 25 Del. Code Section 7026(b)."[59] This definition embodies the requirement that, to be an "HOA", the association in question must be registered with the Authority.

Courts generally defer to regulatory decisions within an agency's area of expertise. However, it is inappropriate for this Court to interpret a *statute* solely by reference to a definition in a set of *regulations*. Instead, I must accord the

---

[58] 1 *Del. Admin. C.* § 202(2).
[59] *Id.*

17

administrative body's interpretation due weight to the extent it serves the ultimate goal of statutory construction, which is "to determine and give effect to legislative intent."[60] I note that the definition of "the home owners' association" or "HOA" as used in a statute is a matter of construction, and does not invoke the technical expertise of the Authority. Finally, I note that the Authority was a party to this action and has argued that the Regulations should not be interpreted so as to deny standing here,[61] and that the Regulations themselves recognize that the definitions apply only so long as "the meaning set forth [is not] inconsistent with the Act or the manifest intention of the Act."[62] Therefore, I am hesitant to assign great weight to the Authority's definition in my determination of the meaning of "the home owners' association" in Section 7043(c).

The Plaintiff's argument based on the Regulations is unavailing for a more fundamental reason, however: The Regulations do not purport to assign their own limited definition of "HOA" to the *standing* question. When the Regulation provides for standing to seek arbitration, it states only that arbitration is triggered "[u]pon receipt of a petition to appoint a qualified arbitrator pursuant to [Section] 7043(c),"[63] and, as we have seen, that Section is silent as to any registration requirement. In

---

[60] *LeVan*, 940 A.2d at 932 (citing *Eliason*, 733 A.2d at 946).
[61] Def. Authority's Answering Br. 13–14.
[62] 1 *Del. Admin. C.* § 202(2).
[63] 1 *Del. Admin. C.* § 202(7.1).

other words, the Regulations themselves are silent as to the crucial issue of standing.[64]

For all the reasons above, I do not find the definition of "HOA" in the Regulations controlling for standing purposes.

In light of the foregoing, I interpret the term "the home owners' association" in Section 7043(c) to include any HOA that files a petition with the Authority on behalf of one or more dissenting home owners. The WMHA meets this definition. The WMHA was a functioning home owners' association that had represented residents in the Wild Meadows community since at least 2003. Moreover, the Plaintiff had frequently recognized and dealt with WMHA as a home owners' association prior to this lawsuit, including sending WMHA a notice of a rent increase pursuant to the Act in 2013. The Plaintiff has not disputed these facts, arguing only that WMHA's historical function is immaterial to the Court's decision. Therefore, I find that WMHA fits within the meaning of "the home owners' association" in Section 7043 and had standing to petition the Authority in this case.

I note that if my decision were different, I would have to consider equitable

---

[64] Furthermore, I note that the Regulations themselves do not once use the defined term "HOA" in regard to arbitration procedures. Instead, Section 7 of the Regulations—dealing with arbitration—exclusively uses the term "the Home Owners Association," which is itself undefined and closely matches the statutory term I analyze here. The parties did not comment on this distinction in their briefing or at oral argument. However, it seems clear to me that if the Authority intended to limit standing to arbitrate by utilizing its defined term "HOA," it would have, at the very least, used that term in the section that governs arbitration.

issues of acquiescence or estoppel here. The Plaintiff, at the statutorily-prescribed meeting that led to the WMHA's exercise of arbitration rights, asked home owners to register and to indicate if they were represented by an HOA, without differentiating between WMHA and Wild Meadows Land Owners, Inc. Nearly 200 home owners indicated they were represented by an HOA, and presumably many expected that their rights were being enforced by WMHA in the arbitration. To the extent there is confusion, it was partly the result of the Plaintiff's ambiguous registration sheet. Any home owner individually could have sought arbitration, and to extinguish those rights based on a technical defect would require equitable examination of the factors referenced above.

Lastly, the Plaintiff raises what it contends is another procedural defect with respect to the arbitration; it asserts that WMHA lacks standing to petition the Authority because it improperly purported to bring its petition "on behalf of the Board of Directors" of WMHA.[65] The Plaintiff argues that the Act does not give the Board of Directors standing to petition the Authority, pointing to 25 *Del. C.* § 7043(c), which provides that the HOA may petition the Authority "on behalf of 1 or more affected home owners." I find that argument unpersuasive.

The Plaintiff does not argue that WMHA did not *intend* to represent one or more affected home owners through its petition. Instead, the Plaintiff argues that by

---

[65] Compl. Ex. G.

using the phrase "[o]n behalf of the Board of Directors" in its petition, WMHA has failed to comply with the statutory provision to petition on behalf of a home owner or owners. However, the statute does not specify the wording an HOA must use in its petition. Consistent with the discussion above, if the plain meaning of the statute does not specify such a requirement, it would frustrate the broadly-remedial intent of the General Assembly to add one here. WMHA was a functioning HOA that represented many of the residents in Wild Meadows. Although its petition—which was in the form of a letter—indicated that it was brought on behalf of the Board of Directors, it is clear to me that the arbitration was sought at *the direction* of the Board of Directors, who were themselves home owners, while the intent of WMHA was to represent its *members.* Indeed, WMHA's arbitration petition itself discloses that, after the Plaintiff's presentation to the home owners at the rent-increase meeting, WMHA notified an attorney for the Plaintiff that it would petition to seek arbitration, which it did two days later. I find that WMHA's petition was intended to be, and in fact was, brought on behalf of its members and complied with the statute.

## V. CONCLUSION

In sum, I find that WMHA complied with the statutory requirements and had

21

standing to petition the Authority for arbitration.[66]  Based on the foregoing, I grant

the Motion for Summary Judgment in favor of WMHA, and deny the Motion of the

Plaintiff.  The parties should provide an appropriate form of order.

---

[66] Although the Arbitrator decided that WMHA had standing and that the matter was therefore properly before him, no party has argued that arbitrability, in this statutory scheme, was a matter for the Arbitrator, and therefore I have not considered that issue or the Arbitrator's decision on arbitrability here.