# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DLAYAL HOLDINGS, INC., a Delaware corporation,<br><br>     Plaintiff,<br> v.<br><br>MARWAN AL-BAWARDI,<br><br>     Defendant. | C.A. No. 2020-1067-LWW |
| MARWAN ALBAWARDI,<br><br>     Third Party Plaintiff,<br><br> v.<br><br>RODGER GRACEY, BETTY GRACEY and MARNIE GRACEY,<br><br>     Third Party Defendants. | |
| DLAYAL HOLDINGS, INC., a Delaware corporation,<br><br>     Plaintiff,<br> v.<br><br>RODGER GRACEY, BETTY GRACEY and MARNIE GRACEY,<br><br>     Defendant. | C.A. No. 2020-1070-LWW<br><br>(COORDINATED) |

## MEMORANDUM OPINION

Date Submitted: September 28, 2021
Date Decided: December 27, 2021

Lisa Zwally Brown and Corinne R. Moini, GREENBERG TRAURIG, LLP, Wilmington, Delaware; *Counsel for Plaintiff Dlayal Holdings, Inc.*

Daniel K. Astin, CIARDI CIARDI & ASTIN, Wilmington, Delaware; Albert A. Ciardi and Walter W. Gouldsbury, CIARDI CIARDI & ASTIN, Philadelphia, Pennsylvania; Marc Litt and Evan Weintraub, WACHTEL MISSRY LLP; New York, New York; *Counsel for Third-Party Plaintiff Marwan Albawardi*

Sidney S. Liebesman and Katelyn M. Crawford, FOX ROTHSCHILD LLP, Wilmington, Delaware; Justin P. Phelps, GIBSON WATSON MARINO LLC, Wichita, Kansas; *Counsel for Defendants and Third-Party Defendants Rodger Gracey, Betty Gracey, and Marnie Gracey*

**WILL, Vice Chancellor**

This decision resolves a question of personal jurisdiction regarding three Kansas residents who are the defendants and third-party defendants in two coordinated actions. The parties' disputes largely concern a Delaware limited liability company formed for the purposes of managing real property in several states. None of those properties are in Delaware. The properties in question are two ranches in Kansas that were managed by the defendants.

The actions in this court cannot proceed against the three Kansas residents. The plaintiffs assert that jurisdiction is proper because the defendants should be considered acting managers of the entity. But the defendants merely oversaw the day-to-day operations of the ranches, which is not equivalent to managing the entity that owned those properties. I therefore grant the defendants' motions to dismiss pursuant to Court of Chancery Rule 12(b)(2).

## I.    BACKGROUND

Unless otherwise noted, the following facts are based on the Verified Complaints filed by plaintiff Dlayal Holdings, Inc. in two coordinated actions and the Verified Third Party Complaint filed by plaintiff Marwan Albawardi, along with the documents they incorporate by reference.[1] Additional facts recited are not

---

[1] For clarity, docket references in this decision are designated as "Albawardi" for the matter C.A. No. 2020-1067-LWW and "Gracey" for the matter C.A. No. 2020-1070-LWW. Verified Compl. ("Albawardi Compl.") (Albawardi Dkt. 1); Verified Compl. ("Gracey Compl.") (Gracey Dkt. 1); Verified Third Party Complaint (Albawardi Dkt. 6); *see Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court

1

subject to reasonable dispute or are subject to judicial notice.[2] In deciding the motion to dismiss brought by defendants and third-party defendants Rodger Gracey, Betty Gracey, and Marnie Gracey pursuant to Court of Chancery Rule 12(b)(2), this court will "consider the pleadings, affidavits and any discovery of record."[3]

## A. Oasis and Its Formal Managers

Oasis Direct Seven LLC ("Oasis"), a Delaware limited liability company, was formed in 1998 "primarily to own and manage real property in various states."[4] Oasis is wholly owned by its sole member plaintiff Dlayal Holdings, Inc., a real estate holding and management company.[5] Defendant and third-party plaintiff Albawardi was designated as the manager of Oasis at its inception and held the role until 2001 when he formally resigned.[6] Albawardi remained involved in the

---

from considering those documents' actual terms." (quoting *Fletcher Int'l, Ltd. v. ION Geophysical Corp.*, 2011 WL 1167088, at *3 n.17 (Del. Ch. Mar. 29, 2011))); *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint . . . .").

[2] *See, e.g.*, *In re Books–A–Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))); *Lima Delta Co. v. Glob. Aerospace, Inc.*, 2017 WL 4461423, at *4 (Del. Super. Oct. 5, 2017) (explaining that dockets, pleadings, and transcripts from a foreign action are subject to judicial notice).

[3] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

[4] Gracey Compl. ¶ 10; *see also id.* ¶ 7.

[5] *Id.* ¶ 10.

[6] Albawardi Compl. ¶¶ 10, 14.

2

management of Oasis.[7]  Until 2019, his written consent was required for all material actions taken by the formal managers of Oasis.[8]

Multiple individuals served as managers of Oasis following Albawardi's resignation.  Paul Aiken was formally designated as Oasis's manager in its Second Restatement of Operating Agreement and held the role from 2001 to 2004.[9]  Ezra Swartwood served as manager from 2004 to 2011.[10]  And Izzat Tawil held the position from 2011 to 2020.[11]

## B.    The Kansas Ranches

In late 2000 or early 2001, Albawardi, as manager of Oasis, signed a Power of Attorney ("POA") granting Rodger Gracey the authority to purchase a ranch in Kansas (the "First Ranch") on Oasis's behalf.[12]  Rodger Gracey managed the First Ranch from 2001 through June 2019.[13]  His spouse, Betty Gracey, "handled the accounting for the Ranch and was active in management decisions."[14]  Marnie

---

[7] *Id.* ¶ 14.

[8] *Id.* ¶ 15; Albawardi Compl. Ex. A. § 6.2 (Albawardi Dkt. 3).

[9] Albawardi Compl. ¶ 16; Albawardi Compl. Ex. A § 6.1.

[10] Albawardi Compl. ¶ 16.

[11] *Id.*

[12] Gracey Compl. ¶ 14.

[13] *Id.* ¶¶ 15-16.

[14] *Id.* ¶ 15.

Gracey, their daughter (who was previously married to Albawardi), also worked at the Ranch.[15] The Graceys were then, and remain, Kansas residents.[16]

In subsequent years, Oasis's managers executed additional POAs that granted Rodger Gracey continued authority to manage the First Ranch. In 2005, then-manager Swartwood executed a POA permitting Rodger Gracey to perform "[a]ny and all activities, duties and responsibilities related to running, maintaining, improving, or administering the affairs of [the First Ranch]" from February 7, 2005 to February 1, 2008.[17] In 2011, then-manager Tawil executed a second POA appointing Rodger Gracey as property administrator and manager of the First Ranch.[18] Rodger Gracey was authorized to "sign any contract, agreement, lease, license or any other document required for the purpose of administering and managing the [First Ranch]" but was not authorized "to sell or permanently encumber the [First Ranch]."[19]

On November 13, 2015, Owl Creek Ranch LLC was formed as a Kansas limited liability company with Oasis as its sole member.[20] Rodger Gracey was

---

[15] *Id.*

[16] *Id.* ¶¶ 4-6.

[17] *Id.* ¶ 16; Gracey Compl. Ex. C at 1 (Gracey Dkt. 3).

[18] Gracey Compl. ¶ 17.

[19] *Id.*; Gracey Compl. Ex. D at 3.

[20] *See* Gracey Compl. ¶ 4; Gracey Defs.' Opening Br. Ex. 4 at Ex. B (Gracey Dkt. 13).

appointed as the manager of Owl Creek, which purchased a second property adjacent to the First Ranch in Kansas (the "Second Ranch" and, with the First Ranch, the "Ranches").[21] Marnie Gracey assisted with the purchase of the Second Ranch.[22] Betty Gracey acted as an accountant and bookkeeper for the Ranches.[23]

In 2019, Oasis informed the Graceys that it planned to sell the Ranches.[24] Upon reviewing the books and records of the First Ranch in preparation for the sale, Oasis and Dlayal discovered accounting irregularities.[25] The Graceys had allegedly received substantial grants from government programs but failed to account for or remit the funds to Oasis.[26] The Graceys also purportedly misappropriated company funds, made unauthorized purchases, and incurred substantial debt in Oasis's name without authorization.[27] Oasis revoked the POA authorizing Rodger Gracey to manage the First Ranch.[28]

---

[21] *See* Gracey Compl. ¶¶ 4, 18; Gracey Defs.' Opening Br. Ex. 4 at Exs. B, O, P.

[22] *See* Gracey Compl. ¶ 6; Gracey Defs.' Opening Br. Ex. 4 at Exs. O, P.

[23] Gracey Compl. ¶ 5.

[24] *Id.* ¶ 18.

[25] *Id.* ¶¶ 18, 23.

[26] *Id.* ¶ 19; Albawardi Compl. ¶ 21.

[27] Gracey Compl. ¶¶ 20-21; Albawardi Compl. ¶¶ 22-23.

[28] Gracey Compl. ¶ 22; Albawardi Compl. ¶ 27.

### C. This Litigation

Litigation in this court commenced on December 17, 2020 when plaintiff Dlayal filed two separate complaints: one against Albawardi (the "First Action")[29] and another against the Graceys (the "Second Action").[30] The First Action advances one count for breach of fiduciary duty.[31] The Second Action seeks a declaration from this court that Dlayal is the sole member of Oasis.[32] On January 27, 2021, the Graceys moved to dismiss the Second Action.[33]

On January 29, 2021, Albawardi filed a third-party complaint against the Graceys in the First Action, seeking indemnification for the breach of fiduciary duty claim filed against him.[34] On April 5, 2021, the Graceys moved to dismiss the third-party complaint in the First Action.[35]

## II. LEGAL ANALYSIS

The Graceys have moved to dismiss Albawardi's third-party complaint in the First Action and Dlayal's complaint in the Second Action for lack of personal

---

[29] Albawardi Dkt. 1.

[30] Gracey Dkt. 1. A separate but related proceeding among the parties is ongoing in the Sixteenth Judicial District Court, Comanche County, Kansas. *See* Gracey Compl. ¶¶ 23-24; Gracey Defs.' Opening Br. Exs. 4-16.

[31] Albawardi Compl. ¶¶ 29-32.

[32] Gracey Compl. ¶¶ 29-35.

[33] Gracey Dkt. 6.

[34] Albawardi Dkt. 6 ¶¶ 23-26.

[35] Albawardi Dkt. 10.

jurisdiction under Court of Chancery Rule 12(b)(2) and because this court is an improper venue.[36] The Graceys also seek dismissal of the Second Action pursuant to Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, I conclude that this court lacks personal jurisdiction over the Graceys. I therefore do not address the Graceys' remaining arguments.[37]

Because a motion under Rule 12(b)(2) presents factual and legal questions, a court cannot grant it "simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process."[38] Thus, "[w]hen a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[39] "If, as here, no evidentiary hearing has been held, plaintiffs

---

[36] Defs.' Opening Br. 1. Presumably, the motions are also brought under Court of Chancery Rule 12(b)(3), though the Graceys' briefs do not say so explicitly.

[37] Dlayal maintains that, even if the court lacks personal jurisdiction over the Graceys, dismissal of the Second Action is unwarranted because the Graceys are not necessary parties and it can pursue the action in rem. *See* Pl.'s Answering Br. 7 (Gracey Dkt. 16). Presently, however, Dlayal's declaratory judgment action is not brought in rem but against the Graceys. I decline to opine on whether or how Dlayal could re-file its complaint.

[38] *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1131 (Del. Ch. 2008) (quoting *Hart Hldg. Co., Inc. v. Drexel Burnham Lambert, Inc.*, 593 A.2d 535, 538 (Del. Ch. 1991)).

[39] *Ryan*, 935 A.2d at 265.

need only make a *prima facie* showing of personal jurisdiction and the record is construed in the light most favorable to the plaintiff."[40]

Delaware courts resolve questions of jurisdiction using a two-step analysis.[41] First, the court must "determine that service of process is authorized by statute."[42] Second, the defendant must have certain minimum contacts with Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[43]

Both Dlayal and Albawardi identify 6 *Del. C.* § 18-109(a) as the statutory basis for exercising personal jurisdiction over the Graceys.[44] "The Delaware Limited Liability Company Act (the 'LLC Act') authorizes service of process on the managers of limited liability companies formed under the laws of this State."[45] Section 18-109(a) states, in relevant part:

> A manager . . . of a limited liability company may be served with process in the manner prescribed in this section in all civil actions or proceedings brought in the State of Delaware involving or relating to

---

[40] *Id.* (internal citation omitted).

[41] *Id.*

[42] *Id.*

[43] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[44] *See* Pl.'s Answering Br. 8-9; Third-Party Pl.'s Answering Br. 6-7 (Gracey Dkt. 18).

[45] *In re Mobilactive Media, LLC*, 2013 WL 297950, at *29 (Del. Ch. Jan. 25, 2013); *see Total Hldgs. USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 885 n.39 (Del. Ch. 2009) (noting that Section "18–109 of the LLC statute [] provides a basis for specific, not general, personal jurisdiction over defendants").

the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company or any member of the limited liability company, whether or not the manager . . . is a manager . . . at the time suit is commenced.

A manager's . . . serving as such constitutes such person's consent to the appointment of the registered agent of the limited liability company . . . as such person's agent upon whom service of process may be made as provided in this section.[46]

The term "manager" as defined in Section 18-109(a) includes both formal managers and acting managers.[47] A formal manager is designated as such in a limited liability company's governing documents.[48] An acting manager is not formally designated as a manager in the entity's governing documents but "participates materially in the management of the limited liability company."[49] Dlayal and Albawardi concede that none of the Graceys were formal managers of Oasis.[50] They contend that the Graceys should be viewed as acting managers of Oasis for purposes of Section 18-109(a) due to their participation in the management of the Ranches.[51]

---

[46] 6 *Del. C.* § 18-109(a).

[47] *Metro Storage Int'l LLC v. Harron*, 2019 WL 3282613, at *5-6 (Del. Ch. July 19, 2019); *see* 6 *Del. C.* § 18-109(a).

[48] *See* 6 *Del. C.* § 18-109(a); *see also* 6 *Del. C.* § 18-101(12).

[49] 6 *Del. C.* § 18-109(a).

[50] Pl.'s Answering Br. 10-11; Third-Party Pl.'s Answering Br. 8-9; *see supra* Section I.A (discussing Oasis's formal managers).

[51] *See* Pl.'s Answering Br. 8-13; Third-Party Pl.'s Answering Br. 6-12.

9

## A. Material Participation in the Management of an LLC

Determining what qualifies as material participation for purposes of Section 18-109(a) presents a question of statutory interpretation. The principles of statutory construction are "designed to ascertain and give effect to the intent of the legislators, as expressed in the statute."[52] If the statutory language is unambiguous, the court must "adhere to the plain meaning of the statutory language."[53]

"Section 18-109(a)(ii) permits a plaintiff to serve process on a person who 'participates materially in the management of the limited liability company.'"[54] That language is not susceptible to multiple interpretations and a literal reading would not "lead to an unreasonable or absurd result not contemplated by the legislature."[55] "[T]he plain meaning of the statutory language" therefore controls.[56]

The plain meaning of the phrase "participates materially" has been interpreted as "taking part in or playing a role in an activity or event. When modifying the word

---

[52] *Chase Alexa, LLC v. Kent Cty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010); *see Dir. of Revenue v. CNA Hldgs., Inc.*, 818 A.2d 953, 957 (Del. 2003) ("The goal of statutory construction is to 'ascertain and give effect to the intent of the legislature.'" (quoting *Ingram v. Thorpe*, 747 A.2d 545, 547 (Del. 2000))).

[53] *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 286 (Del. 2016); *see Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999) ("If a statute is unambiguous, there is no need for judicial interpretation, and the plain meaning of the statutory language controls.").

[54] *Metro Storage*, 2019 WL 3282613, at *8 (quoting 6 *Del. C.* § 18-109(a)).

[55] *Dir. of Revenue*, 818 A.2d at 957 (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co., Inc.*, 772 A.2d 172, 175 (Del. 2001)).

[56] *Id.* (quoting *Eliason*, 733 A.2d at 946).

'participate,' the word 'materially' introduces a level of significance. It requires meaningful participation, rather than minor participation."[57] Based on that interpretation, Section 18-109(a) requires that an individual take a meaningful part or play a significant role in management of a limited liability company in order to qualify as an acting manager. This court has found that a defendant participated materially in the management of a limited liability company for purposes of Section 18-109 when the defendant: (1) served as an officer of the limited liability company and ran its day-to-day operations, (2) performed actions within the exclusive purview of a manager, or (3) conceded that he materially participated in the management of the limited liability company in question.

In *PT China LLC v. PT Korea LLC*, the court exercised personal jurisdiction over a third-party defendant who was named "as a Principle and key man" in a joint venture between two limited liability companies and was responsible for developing the joint venture's investment opportunities.[58] The defendant conceded that "he

---

[57] *Metro Storage*, 2019 WL 3282613, at *8 (citing Participation, *Black's Law Dictionary* (11th ed. 2019); Material, *Black's Law Dictionary* (11th ed. 2019)); *see also Lone Pine Res., LP v. Dickey*, 2021 WL 2311954, at *7 (Del. Ch. June 7, 2021) ("The *Metro Storage* Court took a plain-language approach to Section 18-109 in light of the Delaware Supreme Court's decision in *Hazout* . . . . This decision takes the same approach.").

[58] 2010 WL 761145, at *5 n.25 (Del. Ch. Feb. 26, 2010).

participated materially in the management of [the two limited liability companies]."[59]

In *Phillips v. Hove*, the defendant served as the president of a limited liability company, took over the day-to-day operations of the company in all respects, and filed a bankruptcy petition on its behalf.[60] The court found that, because he "effectively ran the business," he satisfied the requirements of Section 18-109(a) and consented to suit in Delaware.[61]

In *In re Mobilactive Media, LLC*, the court held that personal jurisdiction was proper under the implied consent statute where a defendant directed a limited liability company's filing of an action seeking dissolution.[62] The entity allegedly had no employees at the time of the filing.[63] Moreover, the court recognized that an application for dissolution statutorily required that it be made "by or for a member or manager."[64]

In *Metro Storage International LLC v. Harron*, the defendant "served as the president of [two limited liability companies], managed [their] day-to-day affairs,

---

[59] *Id.*

[60] 2011 WL 4404034, at *9, *22, *24 (Del. Ch. Sept. 22, 2011).

[61] *Id.* at *22.

[62] 2013 WL 297950, at *30 (Del. Ch. Jan. 25, 2013).

[63] *Id.*

[64] *Id.* (quoting 6 *Del. C.* § 18-802).

12

made decisions for the [companies], and only sought approval from the officially designated manager for major issues like financial commitments."[65] Under a plain language interpretation of Section 18-109(a)(ii), the court held that the defendant was participating materially in the management of both companies.[66]

And in *Lynch v. Gonzalez*, the court found after trial that a preponderance of the evidence demonstrated that a defendant acted as an entity's manager under Section 18-109(a) because the defendant "formally served as [the limited liability company's] President, controlled [its] management and business, and made the ultimate decisions for the [limited liability company]."[67]

### B. The Graceys' Lack of Material Participation in the Management of Oasis

The Complaints do not allege any such material participation in the management of Oasis by the Graceys. The plaintiffs contend that Rodger Gracey had a meaningful role in the management of Oasis by exercising his authority over the Ranches from 2001 to 2019.[68] They point out that Rodger Gracey was granted multiple POAs appointing him as property administrator and manager of the First

---

[65] 2019 WL 3282613, at *11 (Del. Ch. July 19, 2019).

[66] *Id.*

[67] 2020 WL 4381604, at *40 (Del. Ch. July 31, 2020).

[68] Pl.'s Answering Br. 10-12; Third-Party Pl.'s Answering Br. 8-9; *see supra* Section I.B.

13

Ranch.[69] The plaintiffs argue that these facts are analogous to those in *Metro Storage* and *Phillips*, where the defendants were found to be acting managers.[70]

But there are key distinctions between the facts presented here and those at issue in *Metro Storage* and *Phillips*. In both of those cases, the defendant served as the president of the limited liability company and managed the day-to-day operations of the entity.[71] Rodger Gracey did not serve as an officer of Oasis. He is not alleged to have overseen Oasis's operations, participated in the management of its investment portfolio, held decision-making authority over all of its assets, or performed any actions within the exclusive purview of a manager. He was not even consulted when Oasis decided to sell the Ranches. As the Complaints repeatedly allege, Rodger Gracey simply managed the day-to-day operations of two of Oasis's Kansas assets: the First Ranch and Second Ranch.[72] Overseeing the Ranches is not

---

[69] Pl.'s Answering Br. 10; Third-Party Pl.'s Answering Br. 8-9.

[70] Pl.'s Answering Br. 12-13; Third-Party Pl.'s Answering Br. 10-12.

[71] *See supra* Section II.A.

[72] Gracey Compl. ¶ 4 (alleging that Rodger Gracey "acted as a manager and agent of two ranches owned by Oasis"); *id.* ¶ 15 (alleging Rodger Gracey "was given the responsibility to manage the Ranch"); *id.* ¶ 17 (describing the POA as limited to the Indian Creek Ranch); Albawardi Compl. ¶ 4 (explaining that the Graceys were "responsible for the management, accounting and other work, respectively, for a property that Oasis purchased in Kansas known as the Indian Creek Ranch"); *id.* ¶ 10 (alleging that "Rodger [Gracey] was managing the day-to-day operations of the Ranch"); *id.* ¶ 20 (describing the POA as giving Rodger Gracey authority to engage in "any and all activities, duties and responsibilities related to running, maintain[ing], improving or administering the affairs of [the First Ranch]"); *id.* ¶ 21 (same); *see Fla. R & D Fund Inv'rs, LLC v. Fla. BOCA/Deerfield R & D Inv'rs, LLC*, 2013 WL 4734834, at *8 (Del. Ch. Aug. 30, 2013) ("The management of the underlying assets of an LLC is analytically distinct from the management of the LLC itself for the

equivalent to materially participating in the management of Oasis. Oasis did not exist solely to manage the Ranches. It was, according to Dlayal, "formed . . . primarily to own and manage real property *in various states*."[73]

These facts are closer to those found in *In Matter of Dissolution of Arctic Ease, LLC*.[74] In *Artic Ease*, the limited liability company in question owned a subsidiary.[75] The defendant negotiated a distribution agreement on behalf of the subsidiary, arranged bridge financing for the subsidiary, and marketed the subsidiary's products.[76] The court held that "these allegations [were] not sufficient to suggest that [the defendant] materially participated in management" of the limited liability company.[77] Although the court conducted its analysis under the control overlay called into question by Vice Chancellor Laster in *Metro Storage*, the court in *Artic Ease* nonetheless "reached a logical outcome on the facts, because the

---

purposes of Section 18-109(a)(ii).""); *Wakley Ltd. v. Ensotran, LLC*, 2014 WL 1116968, at *5 (D. Del. Mar. 18, 2014) (finding that the fact a defendant "assumed management over one of [a limited liability company's] projects . . . fail[ed] to demonstrate the necessary control or decision-making role that has been found to satisfy the statutory standard for personal jurisdiction").

[73] Gracey Compl. ¶ 10 (emphasis added). Counsel for Dlayal represented that, during the relevant period, Oasis also owned properties in Colorado and Massachusetts. *See* Oct. 7, 2021 Letter (Gracey Dkt. 23). Rodger Gracey is not alleged to have been involved in the operations of or exercised authority over those properties.

[74] 2016 WL 7174668 (Del. Ch. Dec. 9, 2016).

[75] *Id.* at *4.

[76] *Id.*

[77] *Id.* at *5.

allegations . . . do not appear to have supported jurisdiction under a plain-language interpretation of the material-participation test."[78]

Moreover, the POAs that granted Rodger Gracey the authority to administer the First Ranch do not provide a basis to deem him a manager of Oasis.[79] Under 6 *Del. C.* § 18-407, a manager may delegate any of her "rights, powers, or duties to manage and control the business and affairs of the limited liability company."[80] Such a delegation "shall not . . . cause the person to whom any such rights, powers and duties have been delegated to be a . . . manager . . . of the limited liability company."[81]

In short, Rodger Gracey did not participate materially in the management of Oasis. His role was limited to managing the Ranches. He therefore cannot be deemed a manager of Oasis as defined by Section 18-109 for purposes of personal jurisdiction.

The plaintiffs' arguments regarding jurisdiction over Betty and Marnie Gracey are even more strained. Betty Gracey served as a bookkeeper for the

---

[78] *Metro Storage*, 2019 WL 3282613, at *19; *see also Arctic Ease*, 2016 WL 7174668, at *5.

[79] *See Wakley*, 2014 WL 1116968, at *6 (holding that, under Section 18-407, the court did "not have a statutory basis for personal jurisdiction" over defendants who had been delegated authority by a formal manager).

[80] 6 *Del. C.* § 18-407.

[81] *Id.*

Ranches. Marnie Gracey worked at the First Ranch and assisted in the purchase of the Second Ranch. There are no allegations that either Betty or Marnie Gracey controlled Oasis's management or business. The limited responsibilities they allegedly had with regard to the Ranches cannot support an inference that Betty or Marnie Gracie participated materially in the management of Oasis. They do not fall within the definition of a manager for the purposes of Section 18-109 and cannot be served on that basis.

Dlayal and Albawardi have therefore failed to identify a statutory basis for exercising personal jurisdiction over the Graceys. No other basis for jurisdiction over the Graceys is asserted.[82]

## III. CONCLUSION

For the reasons described above, this court lacks personal jurisdiction over the Graceys. Their motion to dismiss pursuant to Court of Chancery Rule 12(b)(2) is granted. Dlayal's Complaint in the Second Action and Albawardi's Third-Party Complaint in the First Action are dismissed in their entirety.

---

[82] Because the plaintiffs have failed to allege a non-frivolous basis for personal jurisdiction, the court declines to order jurisdictional discovery. "[T]he decision to grant jurisdictional discovery is discretionary." *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 5092894, at *2 (Del. Ch. Oct. 10, 2019). "Before ordering personal jurisdiction discovery, there must be at least 'some indication that this particular defendant is amenable to suit in this forum.'" *Id.* at *1 (quoting *In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 831 n.195 (Del. Ch. 2009)). There is no such indication here.